

**SOUTH SHORE MEDICAL CENTER - INTERNAL MEDICINE**
143 LONGWATER DRIVE
NORWELL MA 02061-1683
Phone Number: 781-878-5200
Fax Number: 781-681-1712

10/28/2021

Joseph Dyer
80 Meadowbrook Rd
Hanover MA 02339

To Whom It May Concern:

Joseph Dyer is a patinet under my care. Joseph P Dyer is currently residing with his son William Dyer in his son's home. William is the primary full time caretaker of his father and manages his alzheimer's along with being responsible for mornings and nights. Joseph requires 24 hour supervision and on the off hours they have a nurse coming from 9am-5pm weekdays. Joseph is unable to walk and requires a hoyer to get into wheelchair. He son, William, provides transportation and accompany him to all his appointments.

Sincerely,

Susan Swords, MD/mzb



**SOUTH SHORE MEDICAL CENTER - INTERNAL MEDICINE**
143 LONGWATER DRIVE
NORWELL MA 02061-1683
Phone Number: 781-878-5200
Fax Number: 781-681-1712

May 4, 2021

William Dyer
80 Meadowbrook Road
Hanover MA 02339

To Whom It May Concern:

Joseph P Dyer is currently residing with his son William Dyer in his son's home. William is the primary caretaker of his father and manages his alzheimer's.

If you have any questions or concerns, please don't hesitate to call.

Sincerely,

Nils Rainer Hoernle, MD/NH

# KRIS LARSEN

110 College Pond Rd., Plymouth, MA 02360    617.694.8836
larsen1191@gmail.com

April 23, 2021

RE:   Bill Dyer
      80 Meadowbrook Rd
      Hanover, MA 02339

To whom it may concern;

I have had the privilege of knowing Bill Dyer for over 45 years. I first came into contact with him when I was his teacher in his junior high school.

I have watched him progress from adolescence into adulthood becoming a husband, father, grandfather, who has created a company that has a substantial corner of the asphalt paving business in the South Shore of the Boston area.

As his former teacher, he has made me quite proud of the person and businessman he has become.

As a retired general contractor, I can look back at numerous projects he has completed for my company over the years. His follow-through and commitment to a "job well done" is unusual in today's market.

Bill has a reputation as a strong supporter of community activities and charities.

I have observed the love he has shown for his family; especially his elderly father who depends on him for almost complete care.

It is an honor for me to call Bill "my friend"!

Should you have any questions please contact me at your convenience.

Sincerely,

Henry C. "Kris" Larsen

# LIVING WILL
# AND
# HEALTH CARE PROXY
# OF
# JOSEPH P. DYER

To my family, my physician, my lawyers and to any medical facility in whose care I may be placed, and to any individual who may become responsible for my health, welfare or affairs.

## ARTICLE I

Death is as much a reality as birth, growth, maturity and old age. It is the one certainty of life. If the time comes when I, **Joseph P. Dyer**, presently residing at 20 Liane Way, Pembroke, Massachusetts, 02359, can no longer take part in decisions for my own future, let this statement stand as an expression of my wishes, while I am still of sound mind.

If the situation should arise in which (1) I have been diagnosed by a physician to have an irreversible condition that is reasonably expected to result in my death within one year, regardless of the treatment that I may receive, or (2) I have been in a coma or a consistent vegetative state for at least thirty (30) days and there is no reasonable possibility (as determined by a consensus of medical authorities as my health care agent may choose) that I will return to a cognitive and meaningful life, then I request that I be allowed to die with dignity and not be kept alive by artificial means or heroic measures. The terms "artificial means" and "heroic measures" as used here shall include, but shall not be limited to, the following procedures: mechanical or artificial respiration, artificial or invasive measures for providing nutrition and hydration, blood transfusion, surgery, kidney dialysis, experimental surgical procedures, transplantation of vital

organs, and amputation of a limb. I also would want any artificial means or heroic measures discontinued under the above situation, even if this situation existed at the time procedures were commenced. I do not fear death itself so much as the indignities of deterioration, dependence, and hopeless pain. I therefore ask that medication be mercifully administered to me to alleviate suffering even though this may hasten the moment of my death.

## ARTICLE II

I understand that my wishes and desires, etc. expressed in this document may not cover all possible aspects of my care if I become physically or mentally incapacitated or incompetent. It may also be undecided whether or not I may want a particular treatment prior to my incapacity. Consequently, there may be need for someone to accept or refuse medical intervention(s) for me after consultation with my physician while I am unable to make or communicate my wishes regarding the same.

I do hereby constitute my son, **William E. Dyer**, as my Health Care Agent ("Agent") to act for me in my name; and if she shall cease or be unavailable to serve as my Health Care Agent for any reason, then I appoint my daughter, **Kelly Ann Lavallee**, as my Alternate Health Care Agent.

This power is intended to confer upon my Health Care Agent all of the rights and powers afforded to Health Care Agents under all applicable laws, statutes and other regulations, in addition to those specific powers set forth herein.

This Health Care Proxy shall take effect upon my incapacity and shall continue for the period of such incapacity. My incapacity shall be determined by my Agent in consultation with my physician, and any such determination of incapacity made in good faith shall activate this proxy.

If no Agent designated in this instrument is available or able to serve, I request that my desires as expressed in this instrument be given full force and effect as a written expression of intent under applicable law.

## ARTICLE III

My Agent is authorized to make all necessary arrangements for my care at home or at any hospital, hospice, nursing home or similar establishment, and to make advance arrangements for my funeral and burial, if I have not already done so myself.

My Agent is authorized to make all decisions relating to my health and medical care. My Agent should make the same health or medical care choice that I would want made under the circumstances. In doing so, my Agent should first try to discuss with me the specifics of any proposed decision regarding my health and medical care, if I am able to communicate in any manner. If I am unable to give an informed consent to such care, my Agent shall give or withhold such consent for me in the manner described herein. My Agent is authorized to:

1. request, receive or review information, verbal or written, regarding my personal affairs or my physical or mental health, including medical and hospital records;

2. employ and discharge medical personnel, including physicians, psychiatrists, dentists, nurses, therapists, and health and personal aides; and

3. give or withhold consent to any medical procedure, test or treatment, including surgery, even if this might hasten my death or be against conventional medical advice.

My Agent should be guided, but not limited, by my instructions herein and by any other subsequent instructions, oral or written, that I may give my Agent while I am competent. If my subsequent instructions are different from my instructions herein, my Agent should follow my subsequent instructions, if my Agent determines that they are the choice I would want made. If my Agent cannot determine the choice I would want made, then my Agent should make the choice my Agent believes is in my best interest.

## ARTICLE IV

I nominate, constitute and appoint my Agent to serve as my guardian if warranted, with power to make decisions relating to my health care.

## ARTICLE V

I hereby request and authorize all of my Health Providers to disclose and release any and all of my health information to my Agent (my "Authorized Recipient") that my Agent may request from time to time. This instrument constitutes a HIPAA Authorization under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") regulations.

This HIPAA Authorization explicitly does not revoke or amend any existing HIPAA Authorization I may have previously executed.

This HIPAA Authorization was undertaken and executed solely on my initiative. This instrument is therefore intended to constitute a HIPAA Authorization under 45 CFR §164.508(b) and (c) only, and not an Authorization under 45 CFR §§164-508(d), (e), or (f), not a Consent under CFR §164.506.

My Health Providers may conclusively rely on the representation of my Authorized Recipient that I am living or that less than 3 years have elapsed since the date of my death, and that this HIPAA Authorization has not been revoked, unless the Health Provider has actual knowledge to the contrary. My Health Providers shall not be under any obligation to conduct an independent investigation into the veracity of such representations.

This HIPAA Authorization is effective immediately, and remains in effect until the later of 10 years after the execution of this HIPAA Authorization or 3 years after the date of my death, unless sooner revoked by me.

I may have multiple concurrent valid HIPAA Authorizations, and I may name more than one person as my Authorized Recipient, either in a single HIPAA Authorization or in multiple concurrent HIPAA Authorizations. If more than one person is at any time my Authorized Recipient, my Authorized Recipients are each entitled to the disclosure and release of Health Information as defined in the HIPAA Authorization in which they are designated as my Authorized Recipient. My Authorized Recipient need not coordinate, communicate, or agree with one another. They may act alone or jointly.

## ARTICLE VI

I certify that I have read the provisions of this document stating my wishes for health care, that such provisions have been explained to me to my satisfaction, that I understand such provisions and that such provisions state my wishes and desires under the circumstances described.

My Agent is authorized to make photocopies of this instrument as frequently and in such quantity as my Agent shall deem appropriate. All photocopies shall have the same force and effect as any original. I specifically direct my Agent to have a photocopy of this instrument placed in my medical records.

IN TESTIMONY WHEREOF, I have executed this Health Care Proxy on this _13_ day of _Sept_, 2017.

_Joseph P. Dyer Sr_
Joseph P. Dyer

On this 13th day of September, 2017, JOSEPH P. DYER, of 20 Liane Way, Pembroke, Massachusetts, signed the foregoing instrument in our presence declaring it to be his Health Care Proxy, and as witnesses thereof, we two do now at his request and in his presence and in the presence of each other, hereto subscribe our names.

_____ residing at BARNSTABLE, MA

_Miriam Cadogan_ residing at Rockland, MA

## COMMONWEALTH OF MASSACHUSETTS

Plymouth, ss

Before me, the undersigned authority, on this day appeared the Principal, personally known to me, and the witnesses, personally known to me, whose names are signed to the foregoing instrument, and all of these persons being by me duly sworn, the Principal declared to me and to the witnesses in my presence that this instrument is his Health Care Proxy and that he executed it as his free and voluntary act for the purpose therein expressed; and each of the witnesses stated to me, in the presence of the Principal that he or she signed said Health Care Proxy and to the best of his or her knowledge, the Principal was eighteen years of age or over, of sound mind and under no constraint or undue influence.

_Joseph P. Dyer Jr_
(Principal)

_____
(Witness)

_Miriam Cadogan_
(Witness)

Subscribed and sworn before me by said Principal and the said witnesses this 13th day of September, 2017.

OFFICIAL SEAL
GARY D. THOMAS
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Feb. 26, 2021

Name: _____
Notary Public
My Commission Expires: 2/26/21